UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re

THE VELLANO CORPORATION,

Debtor.

Chapter 11

Case No. 17-11348

## STIPULATION AND FINAL ORDER CONCERNING
## USE OF CASH COLLATERAL AND ADEQUATE PROTECTION

THIS STIPULATION by and between the debtor and Debtor-in-Possession The Vellano Corporation (the "Debtor") and M&T Bank ("M&T"), authorizes the Debtor to use Cash Collateral (as defined below) of on a final basis. For the reasons set forth herein, it is hereby

**FOUND, DRETERMINED AND ADJUDGED:**

A.  Commencement of Case. On July 21, 2017 (the "Petition Date"), the Debtor commenced this case (the "Chapter 11 Case") by filing a voluntary petition for relief under Chapter 11 of Title 11, United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code") with the Clerk of this Court. Since the Petition Date,

the Debtor has continued in the possession, management and operation of its assets, properties and businesses in accordance with Sections 1107 and 1108 of the Bankruptcy Code.

B.  No Trustee, Examiner, Statutory Committee. As of the date of this "Stipulation and Final Order Concerning Use of Cash Collateral and Adequate Protection" (the "Final Order"), no trustee, examiner or statutory committee has been appointed herein.

C.  Jurisdiction. This Court has jurisdiction over the Chapter 11 Case and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a "core" proceeding as defined in 28 U.S.C. § 157(b)(2).

D.  M&T's Pre-Petition Credit Facility. Pursuant to those certain loan arrangements by and between the Debtor and M&T, as evidenced by, among other documents, instruments, and agreements (collectively, together with all other documents, instruments, and agreements related thereto and/or executed in connection therewith, the "M&T Pre-Petition Loan documents"), the following: (i) that certain Daily Adjusting LIBOR Revolving Line Note dated as of April 1, 2015 (the "Revolver")[1], by and between the Debtor and M&T in the original principal amount of $5,000,000.00, which was given in replacement of and in substitution for, but not in payment of, that certain note dated on or about December 22, 2011 in the original principal amount of $11,775,00.00 issued by Vellano Bros, Inc. and assumed by Debtor on June 24, 2013 in favor of M&T, as the same may have been modified from time to time; (ii) that certain Amended and Restated Term Note as of April 24, 2015 (the "Term Note")[2], by and between the Debtor and M&T in the original principal amount of $7,750,000.00, which was given in replacement of and in substitution for, but not in payment of, that certain note dated on or about December 22, 2011 in the original principal amount of $2,000,000.00 given by Vellano

---

1 The Revolver further provided that "(a) the obligations of the Debtor as evidenced by the prior note shall continue in full force and effect, as amended and restated by [the Revolver], all such obligations being hereby ratified and confirmed by the Borrower; (b) any and all liens, pledges, assignments and security interests securing the [Debtor's] obligations under the prior note shall continue in full force and effect, are hereby ratified and confirmed by the [debtor], and are hereby acknowledged by the [Debtor] to secure, among other things, all of the [Debtor's obligations to the Bank under this Note, with the same priority, operation and effect as that relating to the obligations under the prior note; and ( c) nothing herein contained shall be construed to extinguish, release, or discharge, or constitute, create, or effect a novation of, or an agreement to extinguish, the obligations of the Borrower with respect to the indebtedness originally described in the prior note or any of the liens, pledges, assignments and security interests securing such obligations."
2 The Term Note includes the same language quoted at Footnote 2, supra.

Bros, Inc. and assumed by Debtor on June 24, 2013 in favor of M&T; (iii) that certain Credit Agreement dated April 1, 2015 by Debtor in favor of M&T; (iv) that certain General Security Agreement dated April 22, 2015 by Debtor in favor of M&T; and (v) those certain UCC-1 financing statements filed by M&T with respect to the collateral more fully described in the Loan Documents.

E. Pursuant to the M&T Pre-Petition Loan Documents, M&T asserts, and the Debtor stipulates as provided herein, that all cash that constitutes proceeds of the "Collateral" (as defined in the M&T Pre-Petition Loan Documents and referred to herein as the "M&T Collateral") is part of the M&T Collateral and, therefore, is "cash collateral" of the Secured Creditor within the meaning of § 363(a) of the Bankruptcy Code (the "Cash Collateral").

F. Immediate Need for Cash Collateral Use. In the Motion, the Debtor has asserted that it does not have sufficient available sources of working capital and financing to carry on the normal course operation of its business without use of the Cash Collateral. The Debtor has further asserted that its ability to finance its day-to-day operations is essential to preserve the value of the Debtor's business pending a sale of all, or substantially all, of the Debtor's assets pursuant to §363(b) and/or (f). In addition, the Debtor has argued that its need for use of Cash Collateral is critical and immediate. In the absence of the use of Cash Collateral, the continued operation of the Debtor's business and preservation of the value of its assets would not be possible, and serious and irreparable harm to the Debtor and its estate would occur.

G. Interim Cash Collateral Authorization. On August ___, 2017, the Court entered the "Interim Stipulation and Order Authorizing the Debtor-in-Possession to Use Cash Collateral and provide Adequate Protection pursuant to Sections 361 and 363 of the Bankruptcy Code" (the "First Interim Order") [D.R. No. _____].

H. M&T's Conditional Consent. Subject to the terms and conditions of this Final Order, M&T is willing to permit the Debtor to use the Cash Collateral solely for the purposes set forth in, and in accordance with the terms and conditions of, the budget annexed hereto (the "Final Budget") and this Final Order.

I. _Final Cash Collateral Need_. The Debtor's need to use Cash Collateral is immediate and critical to enable the Debtor to administer its Chapter 11 Case generally, continue to operate its business in the normal course, and preserve the value of the estate for all stakeholders. The ability of the Debtor to finance operations, maintain business relationships with customers, pay employees and otherwise finance operations throughout the case requires the availability of working capital from the use of Cash Collateral, the absence of which would immediately and irreparably harm the Debtor, the estate, and the creditors. The Debtor does not have sufficient available sources of working capital and financing to operate its businesses or maintain its properties in the ordinary course of business without the authorized use of Cash Collateral.

J. _Alternative Financing Unavailable_. Given the Debtor's current financial condition, financing arrangements, and capital structure, the Debtor is unable to obtain financing from sources on terms more favorable than provided for in this Final Order. The Debtor likewise has been unable to obtain unsecured credit allowable under Section 364(b)(1) of the Bankruptcy Code as an administrative expense.

K. _Good Faith_. The terms of the Cash Collateral arrangement described herein are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration. The terms concerning the Debtor's use of Cash Collateral as provided for in this Final Order were negotiated in good faith and at arms' length between the Debtor and M&T, and M&T's claims, super-priority claims, replacement liens and other protections granted pursuant to this Final Order will have the protections provided in Section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of this Final Order or any other order.

L. _Stipulation Approved_. Based upon the foregoing findings and conclusions, the representations contained herein, and good and sufficient cause appearing therefor, the Stipulation is approved as provided herein.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED:

1. <u>Interim Order Ratified</u>. Except as expressly altered by or as otherwise set forth in this Final Order, each of the findings, conclusions, representations, recitals, stipulations, and orders contained in the Interim Order shall be and hereby are ratified and affirmed as if set forth herein in full, and shall remain in full force and effect in accordance with the terms of this Final Order.

2. <u>Debtor's Obligations</u>.  The Debtor shall timely perform all obligations of a Debtor-in-Possession required by the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and the Local Rules and Orders of this Court.

3. <u>Cash Collateral Authorization</u>.

    a)  The Debtor is authorized to continue its use of the Cash Collateral during the period from September 1, 2017 through and including 5:00 p.m. (ET) on October 31, 2017 (the "<u>Final Period</u>"), solely on the terms, for the purposes, and in the amounts set forth in the Final Budget attached hereto and made a part hereof as <u>Exhibit "A"</u>; <u>provided that</u>, the Debtor shall not in any event be authorized to exceed the amounts set forth in the Final Budget, by line item or in the aggregate, by greater than 5%, calculated on a cumulative basis, during the Final Period. Anything herein to the contrary notwithstanding, in no event shall the Debtor use any of the Cash Collateral:

    i.  To pay any items not contained in the Final Budget, except (x) after written request to M&T and receipt by the Debtor of M&T's written consent, or (y) as may be approved by the Court after notice to M&T and the opportunity to be heard at a hearing held by the Court; or

    ii. In a manner that is otherwise inconsistent with the terms and provisions of this Final Order.

    b)  The Debtor and M&T may agree from time-to-time to modify the Final Budget in the discretion of M&T without further order of the Court. In the event the Debtor and M&T agree to modify the Final Budget, the Debtor shall provide notice thereof to the U.S. Trustee, M&T, counsel for any Committee of Unsecured Creditors (the "<u>Creditors' Committee</u>") that may be appointed in the Debtor's case, the Court, and

such other parties as shall be entitled to notice thereof under Bankruptcy Rule 4001; provided, however, the Debtor's Cash Collateral usage during the Final Period shall not exceed the aggregate amount permitted under the budget pursuant to the Interim Order or pursuant to this Final Order.

c) Unless sooner terminated in accordance with the terms of this Final Order, the Debtor's right to use the Cash Collateral shall terminate ("Termination") at 5:00 pm (prevailing eastern time) on October 31, 2017. Upon Termination, the Debtor shall immediately cease using the Cash Collateral; however, nothing herein shall be deemed a waiver of (i) the Debtor's right to seek authority to continue its use of the Cash Collateral beyond the Termination, in accordance with §§ 361 and 363 of the Bankruptcy Code, or (ii) the right of M&T to object thereto.

d) The Debtor warrants and represents that, as of the date of this Final Order, the Final Budget includes all reasonable, necessary, and foreseeable expenses to be incurred in connection with the Chapter 11 Case and the operation of the Debtor's business for the Final Period.

e) The Debtor agrees not to knowingly or intentionally incur any administrative expenses other than as set forth in the Final Budget, including any professional fees approved by the Court pursuant to §§ 330, 331, or 503(b) of the Bankruptcy Code without the prior written consent of M&T or approval by the Court after notice to M&T and a hearing.

4. Debtor's Acknowledgment of Indebtedness; Stipulations. Subject to Paragraph 6 below, the entry of a Final Order, and the Final Budget, the Debtor hereby acknowledges and agrees that:

a) M&T's Pre-Petition Debt.

i. M&T asserts and, subject to Paragraph 6 hereof, the Debtor stipulates that as of July 21, 2017, the Debtor is liable to M&T in respect of the obligations arising under and pursuant to the Revolver in the aggregate balance due in the amount of $4,586,329.93, including principal in the amount of $4,574,479.65 and accrued interest in the amount of $11,850.28, plus attorney's fees and costs payable pursuant to the Loan Documents, and the aggregate balance due under the Term Note was $5,565.580.86, including principal in the amount of $5,213,304.88, interest in the amount of $76,441.54 and later charges in the amount

of $275,784.44, plus attorney's fees and costs payable pursuant to the Loan Documents, *plus* all fees, costs, expenses, and costs of collection (including, without limitation, reasonable attorneys' fees) as set forth in the M&T Pre-Petition Loan Documents, heretofore or hereafter incurred by M&T in connection therewith (the "M&T Claim"), to the extent allowable by the Court pursuant to § 506(b) of the Bankruptcy Code and subject to the rights of the Debtor to contest under § 506(b) of the Bankruptcy Code the allowance or payment of those amounts to M&T (the "506(b) Rights").

    b)  M&T's Pre-Petition Security Interests. M&T asserts and, subject to Paragraph 6 hereof, the Debtor stipulates that the M&T Claim is secured by valid, perfected, and unavoidable first priority liens and security interests in, on and upon the Collateral (as defined in the M&T Pre-Petition Loan Documents) (the "Pre-Petition Collateral"), and shall constitute an allowed secured claim pursuant to §§ 506(a) and (b) of the Bankruptcy Code for all purposes in connection with the Debtor's Chapter 11 Case.

    c)  Waiver of Claims/Lien Challenges.

     i.  Subject to Paragraph 6 hereof, the Debtor hereby acknowledges and agrees that the Debtor has no offsets, defenses, claims, or counterclaims against M&T, or M&T's officers, directors, employees, attorneys, representatives, parent, affiliates, predecessors, successors, or assigns, with respect to the pre-petition indebtedness due and owing to M&T, or otherwise, and that if the Debtor now has, or ever did have, any offsets, defenses, claims, or counterclaims against M&T, or its officers, directors, employees, attorneys, representatives, parent, affiliates, predecessors, successors, or assigns, whether known or unknown, at law or in equity, from the beginning of the world through this date, all of them are hereby expressly WAIVED, and the Debtor hereby RELEASES M&T and its respective officers, directors, employees, attorneys, representatives, parent, affiliates, predecessors, successors, and assigns from any liability therefor.

     ii.  Subject to Paragraph 6 hereof, any and all challenges by the Debtor (a) to the validity, sufficiency, priority or amount of the M&T Claim; (b) the perfection of M&T's security interests and liens in the M&T Collateral, as and to the extent applicable; and (c) any and all transfers received by M&T prior

to the Petition Date with respect to the M&T Claim, including, but not limited to, claims or challenges pursuant to §§ 506(c), 544, 547, 548, 549, 550, and 553 of the Bankruptcy Code, shall be forever barred.

5. <u>Adequate Protection</u>. In consideration of the Debtor's use of the Cash Collateral in accordance with the Final Budget and the other terms and provision of this Final Order, M&T shall be and hereby is granted the following "adequate protection" for any diminution in the value of their respective interest in the Collateral from and after the Petition Date:

    a) <u>Post-Petition Replacement Liens</u>.

        i. M&T is hereby granted replacement liens (collectively, the "<u>Replacement Liens</u>"), to the extent of any diminution in value of its Cash Collateral and non-cash collateral, in all of the Debtor's pre-petition and post-petition assets of every kind, nature, and description, tangible and intangible, now existing or hereafter arising, including, but not limited to, all contracts, all accounts, inventory, equipment, general intangibles, goods, motor vehicles, real estate, and leasehold interests, as well as all products and proceeds thereof (collectively, the "<u>Post-Petition Collateral</u>"). The post-petition grant of the foregoing security interests shall be supplemental and in addition to, the security interests which M&T possesses pursuant to the M&T Pre-Petition Loan Documents.

        ii. The Replacement Liens granted to M&T pursuant to this Final Order shall be prior and senior to all liens and encumbrances of (a) all other secured creditors in and to such property granted, or arising, subsequent to the date of this Final Order (including, without limitation, liens and security interests, if any, granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtor other than taxes); (b) any intercompany claim of the Debtor, or any parent, subsidiary or affiliate of the Debtor; and (c) any security interest or lien that is avoided or otherwise preserved for the benefit of the Debtor's estate pursuant to § 551 of the Bankruptcy Code; <u>provided</u>, <u>however</u>, that the Replacement Liens granted to M&T pursuant to this Final Order: (A) shall be subject, during the Final Period, to a carveout for any quarterly or other fees payable to the United States Trustee pursuant to, <u>inter alia</u>, 28 U.S.C. § 1930(a); (B) shall not attach to any claims for relief under Chapter 5 of the Bankruptcy Code or the proceeds

thereof (other than claims arising under Section 549 of the Bankruptcy Code); (C) shall be subject to the terms and provisions of this Final Order; and (D) shall not prime any valid, perfected, and non-avoidable pre-petition lien held by, or granted to, any other party.

        iii.        The Replacement Liens granted pursuant to this Final Order shall constitute valid and duly perfected security interests and liens, and M&T shall not be required to file or serve financing statements, notices of liens or similar instruments which otherwise may be required under federal or state law in any jurisdiction, or take any action, including taking possession, to validate and perfect such security interests and liens; and the failure by the Debtor to execute any documentation relating to the Replacement Liens shall in no way affect the validity, perfection or priority of such Replacement Liens. If, however, M&T, in its sole discretion, shall determine to file any such financing statements, notices of liens or similar instruments, or to otherwise confirm perfection of such Replacement Liens, the Debtor is directed to cooperate with and assist in such process. In connection therewith, the stay imposed by § 362(a) of the Bankruptcy Code is hereby modified to allow the filing and recording of a certified copy of this Final Order or any such financing statements, notices of liens or similar instructions, and all such documents shall be deemed to have been filed or recorded at the time and date of this Final Order.

        iv.        The Replacement Liens will be (x) first in priority if no other valid or non-avoidable pre-existing lien(s) exist on the subject Post-Petition Collateral, and (y) junior in priority if valid and non-avoidable pre-existing lien(s) do exist on the subject Post-Petition Collateral, but only with respect to such pre-existing liens.

        v.        The liens granted to M&T herein may not be primed by any other lien or encumbrance whether by order of the Bankruptcy Court or the passage of time. All rights of M&T to object to any attempted priming are expressly reserved.

        vi.        The Replacement Liens and security interests created herein shall continue in full force and effect until M&T's Claims have been indefeasibly paid in full in cash, including full payment of the pre-petition portion of M&T's Claims and, to the extent authorized by the Court pursuant to § 506(b) of the

Bankruptcy Code, such interest, fees, costs, and expenses, including reasonable attorneys' fees, whether currently existing or hereafter accrued and incurred, as provided for by the applicable M&T Pre-Petition Loan Documents. The liens and security interests granted and created herein and the priorities of same shall not be affected by the incurrence of indebtedness pursuant to Section 364 of the Bankruptcy Code, or otherwise.

   b) <u>Post-Petition Interest to M&T</u>. As additional adequate protection, the Debtor, without further order of or application to the Court, stipulates and agrees to the accrual of post-petition interest on and after the Petition Date with respect to the M&T Claim at the contractual default rate set forth in the applicable M&T Pre-Petition Loan Documents, subject to the Debtor's 506(b) Rights. Notwithstanding any provision of this Final Order or the applicable M&T Pre-Petition Loan Documents to the contrary, M&T reserves, and this Final Order is without prejudice to, M&T's rights to, among other things, claim additional interest, fees and expenses (including, without limitation, professional fees and expenses) in an amount greater than the amounts provided for in this Final Order.

   c) <u>Super-priority Claims</u>. If, and to the extent that, the Replacement Liens described in paragraph (a) above and the adequate protection payments described herein are insufficient to provide adequate protection for M&T, M&T is hereby granted allowed super-priority claims against the Debtor's estate pursuant to § 507(b) of the Bankruptcy Code (the "<u>M&T Super-priority Claims</u>"), with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to, §§ 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 1113 and 1114 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtor, and any successor trustee or any creditor, in the Chapter 11 Case or any subsequent proceedings under the Bankruptcy Code. No cost or expense of administration asserted against the Debtor's estate under §§ 105, 503(b) and 507(b) of the Bankruptcy Code shall be senior to, or *pari passu* with, M&T's Super-priority Claims.

   d) <u>Payment to M&T</u>. As adequate protection of and for the Debtor's use of the Cash Collateral, in order to secure further the claims of M&T, and to provide M&T with adequate protection for the Debtor's use of its Cash Collateral:

e) Debtor authorizes M&T to sweep its Debtor- in - Possession account held at M&T, effective as of 2:00 p.m. on each Friday during the term of this Stipulation, and debit from the account all funds that exceed $25,000.

f) The automatic stay provisions of 11 U.S.C. §362(a) are deemed vacated and modified to the extent necessary to permit Lender to effect such setoff and sweep. M&T may apply any and all funds set off as provided for herein to the Pre-Petition Indebtedness in such manner as it deems appropriate.

g) M&T shall retain its liens and security interests in the Pre-Petition Collateral, including, but not limited to, its Cash Collateral, and the Debtor shall, and hereby grants to M&T, and M&T shall hereby have, valid, first, perfected and enforceable security interests in and liens upon the Post-Petition Collateral as provided for herein.

h) Except as expressly set forth in this Stipulation and Order, the liens granted in this Stipulation and Order: (a) shall be subject to M&T's Pre-Petition Liens; and (b) shall not be subordinated to, or made *pari passu* with, any other lien, under Section 364(d) of the Bankruptcy Code or otherwise;

i) The post-petition liens and security interests granted hereunder shall be deemed perfected as of the Filing Date. The liens and security interests granted hereunder shall be subject to any valid, properly perfected, pre-existing lien, right, or interest having a priority as of the Filing Date superior to that of M&T, but otherwise shall, at all times, have priority, over and be senior to, any and all liens, rights or interest of any other party in interest, including the Debtor, any successor trustee in this action or any subsequent proceeding under the Bankruptcy Code, or any other secured creditor of the Debtor. As used herein, the term "Collateral" shall include both Pre-Petition Collateral and Post-Petition Collateral;

j) The Debtor shall be, and is, hereby bound by, and at all times shall comply with, the covenants contained in the Loan Documents, and shall comply with and perform in accordance with, all of the terms, provisions, and conditions of the Loan Documents, and Lender shall have all rights set forth therein;

6. <u>Creditors' Committee; Claims/Liens Challenge Period</u>.

a) The provisions of this Final Order are without prejudice to the rights of the U.S. Trustee to appoint a statutory committee(s), or any rights of a duly appointed committee to challenge the validity, priority or extent of any lien(s) asserted against Cash Collateral, subject to the provisions of this Final Order and subparagraphs (b) and (c) below.

b) Notwithstanding the provisions of Paragraph 4 above, any subsequently appointed statutory committee, any successor trustee or any other party in interest with requisite standing claiming by, through or under the Debtor, other than the Debtor, may file an objection to the amount of the M&T Claim, or file (or seek authority to file, as the case may be) a complaint on behalf of the estate under §§ 506(c), 544, 547, 548, 549, 550, or 553 of the Bankruptcy Code, <u>inter alia</u>, challenging the validity, priority, or extent of M&T's security interests in the Collateral, or otherwise seeking to avoid or recover any transfers received by M&T with respect to the M&T Claim. Any such objection or complaint (as applicable) shall set forth with particularity the basis for the objection or complaint, and the reason why the M&T Claim should not be allowed in full. If no such objection or complaint (as applicable) is filed by a statutory committee or a trustee on or before sixty (60) days following the date of entry of the Interim Order (as applicable, the "<u>Challenge Period</u>"), any and all challenges by any party to the M&T Claim, M&T's security interests or liens against the Collateral, and/or transfers received by M&T in respect of the M&T Claim, as and to the extent applicable, including, but not limited to, those under §§ 506(c), 544, 547, 548, 549, 550 and 553 of the Bankruptcy Code, including, without limitation, any such challenge or any such claim as described herein, including, but not limited to, attempts to surcharge M&T's Collateral pursuant to Section 506(c) of the Bankruptcy Code and claims seeking to subordinate or recharacterize the claims or liens of M&T, shall be forever barred.

c) M&T's Collateral may not be used in connection with: (i) objecting, challenging, litigating, opposing, or seeking to subordinate or recharacterize in any way any claims or liens held by or on M&T's behalf; (ii) asserting, commencing or prosecuting any claims or causes of action, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code, against M&T, or any of its affiliates, agents,

attorneys, advisors, professionals, officers, directors and employees; and/or (iii) prosecuting an objection to, or contesting or opposing in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, character or enforceability of any of M&T's claims or liens, including, without limitation, the Replacement Liens.

7. <u>Default; Termination of Cash Collateral Usage</u>. Anything in this Final Order to the contrary notwithstanding, the Debtor shall be prohibited from using the Cash Collateral, absent further order of this Court, upon M&T having first notified the Debtor, the Court, counsel for any statutory committee(s) (as and to the extent applicable), and the U.S. Trustee in writing that an Event Of Default has occurred and is continuing. For purposes of this Final Order, an "<u>Event Of Default</u>" shall occur if (a) the Debtor fails to perform any of its obligations in accordance with the terms of this Final Order, including, without limitation, the failure to use Cash Collateral in compliance with the Final Budget, (b) any representation or warranty made by the Debtor under this Final Order, or any pleading, certificate, report or financial statement delivered to M&T in this Chapter 11 Case proves to have been false or misleading in any material respect as of the time when made or given (including by omission of material information necessary to make such representation, warranty or statement not misleading), (c) without the prior written consent of M&T, a Chapter 11 trustee or examiner is appointed, (d) the Debtor's Chapter 11 Case is converted to a case under Chapter 7, (e) without the prior written consent of M&T, the Debtor shall file a motion seeking to grant a third party a security interest or lien upon all or part of any property of the Debtor that has a priority which is senior to, or equal with, M&T's pre-petition liens or the Replacement Liens in all or any portion of such property, (f) the Debtor shall fail to furnish to M&T the financial reporting required under Paragraph 11 hereof, (g) the Debtor shall fail to provide M&T with the access provided for under Paragraph 13 hereof, (i) without the prior written consent of M&T, the grant by the Court of a motion for relief from the automatic stay in favor of any party, other than M&T, with respect to any portion of M&T's Collateral (including, but not limited to, any Cash Collateral), (j) there occurs a reversal, vacatur, or reconsideration of this Final Order by the Court or any appellate court, or (k) without the prior written consent of M&T, there is filed by the Debtor any motion to amend or modify the terms of this Final

Order; provided, however, to the extent the alleged Event of Default is a payment default or otherwise susceptible to cure, M&T shall provide the Debtor and Debtor's counsel with written notice thereof and five (5) calendar days' opportunity to cure such default. Upon Termination of the Debtor's right to use Cash Collateral pursuant to the terms of this Final Order, nothing in this Final Order shall be deemed to waive the right of the Debtor or any successor thereto, to bring a motion requesting that this Court authorize the use of Cash Collateral over M&T's objection or any parties' rights to contest any such motion, and nothing in this Final Order shall be deemed to waive any rights of M&T to object thereto.

8.  Cash Management Systems. To the extent the Debtor is required to or otherwise determines to open a new Debtor-In-Possession account, as opposed to converting one of its existing accounts into a designated Debtor-In-Possession account, any such new Debtor-In-Possession account shall be opened and maintained with M&T. All payments or collections of Debtor's accounts receivable or proceeds of the sale of Debtor's inventory shall be deposited in such Debtor-In-Possession account. Anything herein to the contrary notwithstanding, the Debtor and M&T shall implement such procedures and mechanisms as shall be appropriate to implement the terms and provisions of this Final Order to insure Debtor's access to Cash Collateral to fund approved items under the Final Budget.

9.  Section 506(c) Surcharge Waiver. Subject to Paragraph 6 hereof, no expenses of administration of the Debtor's estates shall be charged pursuant to § 506(c) of the Bankruptcy Code, or otherwise, against the Collateral or the Post-Petition Collateral, as and to the extent applicable. Nothing contained in this Final Order shall be deemed to be the consent by M&T, whether express or implied, to any claims against the Collateral or the Post-Petition Collateral, as and to the extent applicable, under § 506(c) of the Bankruptcy Code.

10. No Marshaling. M&T shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral (whether pre-petition or post-petition). Additionally, upon entry of a Final Order, M&T shall be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under Section 552(b) of the Bankruptcy Code shall

not apply to M&T with respect to proceeds, product, offspring or profits of any of the Collateral, to the extent such relief is granted.

11. <u>Financial Reporting</u>. During the Final Period, the Debtor shall furnish to M&T such financial and other information as M&T shall reasonably request, including, but not limited to the following:

a) On or before the close of business on each Monday during the Final Period, each of the following financial reports:

i. A report showing the Debtor's accounts receivable for the immediately preceding weekly period;

ii. Beginning on July 31, 2017, and continuing on the Monday of each week thereafter, unless such day is not a business day, and in such event on the next business day thereafter, a report reflecting the Debtor's inventory levels for the immediately preceding week;

iii. Any financial information and pleadings filed with the Court shall be served electronically upon M&T and its counsel simultaneously with the filing of such information or pleading with the Court;

iv. All other financial information and reports prepared by the Debtor in the ordinary course of its business, including any financial information required by the Court or by any applicable operating guidelines and/or reporting requirements of the U.S. Trustee; <u>subject, however,</u> to any applicable attorney-client and/or work-product privileges;

v. All other reports and financial information required to be provided to M&T by the M&T Pre-Petition Loan Documents otherwise historically provided to M&T, at such times and in the form required by the M&T Pre-Petition Loan Documents or as customary if not required pursuant to the M&T Pre-Petition Loan Documents, notwithstanding anything herein to the contrary; and

vi. Any additional reports as may be reasonably requested by M&T from time to time.

12. <u>Proposed Sale of Assets.</u> As a condition to M&T's consent to the Debtor's use of Cash Collateral in the manner and for the periods provided herein, the Debtor shall promptly move to sell all or

substantially all of its assets, including assets constituting the Pre-Petition Collateral and Post-Petition Collateral. M&T and the Debtor hereby acknowledge that the Debtor has filed a motion pursuant to 11 U.S.C. §363(b) and/or (f), as appropriate, seeking approval of all or substantially all of the Debtor's assets. Notwithstanding the foregoing, nothing herein shall be deemed to constitute M&T's consent to any such sale pursuant to 11 U.S.C. §363(f)(2).

13.     Access. M&T and/or a consultant retained by M&T, shall continue to have access to (a) the Debtor's business premises, (b) the Debtor's personnel (including officers and employees), and (c) the Debtor's books and records (including the Debtor's computer systems in the event that any books and records are electronically maintained by the Debtor), for the purposes of observing the Debtor's business operations and/or reviewing and inspecting the Collateral. M&T and/or M&T's consultant shall take reasonable steps to insure that such review, observation, and/or inspection do not unduly interfere with the Debtor's business operations.

14.     Insurance. The Debtor shall maintain all necessary insurance (including, without limitation, life, fire, hazard, comprehensive, public liability, and workmen's compensation) for its properties, including, but not limited to, the Collateral and the Post-Petition Collateral, in accordance with the obligations under the M&T Pre-Petition Loan Documents and as may be required under any applicable operating guidelines of the U.S. Trustee, naming M&T as loss payee and additional insured with respect thereto. The Debtor shall provide M&T, upon entry of this Final Order, with proof of all such coverage, as well as prompt notification of any change in such coverage which may hereafter occur.

15.     Without Prejudice. This Final Order is without prejudice to: (a) any subsequent request by a party in interest (including, but not limited to M&T) for modified adequate protection or restrictions on use of Cash Collateral; or (b) any other right or remedy which may be available to M&T.

16.     Enforcement. The Court shall retain jurisdiction to enforce the terms of this Final Order.

17.     Miscellaneous.

   a)     Any stay, modification, reversal or vacation of this Final Order shall not affect the validity of any obligation of the Debtor to M&T incurred pursuant to this Final Order. Notwithstanding any such

stay, modification, reversal or vacation, all use of Cash Collateral and all obligations incurred by the Debtor pursuant hereto prior to the effective date of such stay, modification, reversal or vacation, shall be governed in all respects by the original provisions hereof and M&T shall be entitled to all the rights, privileges and benefits, including without limitation, the Replacement Liens and Secured Creditors' Super-priority Claims granted herein.

b)    The provisions of this Final Order, and any actions taken pursuant hereto, shall survive entry of any order which may be entered (a) confirming any plan of reorganization in the Chapter 11 Case, (b) converting the Chapter 11 Case to a Chapter 7 case, or (c) dismissing the Chapter 11 Case, and the terms and provisions of this Final Order as well as M&T's Super-priority Claims and Replacement Liens granted pursuant to this Final Order shall continue in full force and effect notwithstanding the entry of such order, and such Super-priority Claims and Replacement Liens shall maintain their priority as provided by this Final Order.

c)    Nothing contained in the Motion or this Final Order shall constitute a waiver by M&T of its right to seek other or additional relief from the Court as the circumstances may dictate, including, but not limited to, the right to seek additional adequate protection, relief from the automatic stay, dismissal or conversion of the Chapter 11 Case, or the appointment of a trustee or an examiner.

d)    The Debtor is authorized to perform all acts that are deemed reasonably necessary by it and M&T to effectuate the terms and conditions of this Final Order.

18.    <u>Extension of Final Order</u>. M&T and the Debtor may extend this Final Order without further hearing or further order of the Court. The Debtor shall provide written notification of any such extension to the Court and all parties-in-interest entitled to notice under Bankruptcy Rule 2002 or as may otherwise be prescribed by the Court.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

Dated: August 30, 2017

**NOLAN & HELLER LLP**
*Attorneys for M&T Bank*

By: _____
Francis J. Brennan, Esq.
39 North Pearl Street, 3rd Floor
Albany, New York 12207
(518) 449-3300

Dated: August 29, 2017

**THE DELORENZO LAW FIRM**
*Attorneys for Debtor*

By: _____
Richard H. Weiskopf, Esq.
670 Franklin St #100
Schenectady, NY 12305
(518) 374-8494